1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    DEVIN TREVONE LAMAR III,              Case No.  1:23-cv-00462-HBK (PC)

12              Plaintiff,                   SCREENING ORDER[1]

13         v.                               ORDER TO SEVER CLAIMS

14    SONN, TOON, T. LEWIS, and FRANCO,     (Doc. No. 1)

15              Defendants.

16

17         Pending before the Court for screening under 28 U.S.C. § 1915A is the pro se civil rights

18    complaint filed under 42 U.S.C. § 1983 by Devin Trevone Lamar III—a former prisoner.  (Doc.

19    No. 1, "Complaint").  Upon review, the Court finds the Complaint states two distinct cognizable

20    Eighth Amendment excessive use of force claims: the first one against Defendants Sonn and

21    Toon and the second one against Lewis and Franco.  Because the claims are misjoined, they may

22    not proceed in the same action.  Since the Court finds that Plaintiff's claims would likely be time

23    barred if he was required to refile them, the Court will direct the Clerk of Court to sever the

24    claims against Defendants Lewis and Franco and permit Plaintiff to proceed on those claims in a

25    separate action.

26

27    _____
      [1] This matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and
28    Local Rule 302.

**SCREENING REQUIREMENT**

A plaintiff who commences an action while in prison is subject to the Prison Litigation Reform Act ("PLRA"), which requires, *inter alia*, the court to screen a complaint that seeks relief against a governmental entity, its officers, or its employees before directing service upon any defendant.  28 U.S.C. § 1915A.  This requires the court to identify any cognizable claims and dismiss the complaint, or any portion, if is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief.  *See* 28 U.S.C. §§ 1915A(b)(1), (2).

At the screening stage, the court accepts the factual allegations in the complaint as true, construes the complaint liberally, and resolves all doubts in the plaintiff's favor.  *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969); *Bernhardt v. L.A. County*, 339 F.3d 920, 925 (9th Cir. 2003).  A court does not have to accept as true conclusory allegations, unreasonable inferences, or unwarranted deductions of fact.  *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).  Critical to evaluating a constitutional claim is whether it has an arguable legal and factual basis.  *See Jackson v. Arizona*, 885 F.2d 639, 640 (9th Cir. 1989).

The Federal Rules of Civil Procedure require only that a complaint include "a short and plain statement of the claim showing the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2). Nonetheless, a claim must be facially plausible to survive screening.  This requires sufficient factual detail to allow the court to reasonably infer that each named defendant is liable for the misconduct alleged.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).  The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. *Iqbal*, 556 U.S. at 678; *Moss*, 572 F.3d at 969.  Although detailed factual allegations are not required, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678 (citations omitted), and courts "are not required to indulge unwarranted inferences," *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

The Rules permit a complaint to include all *related claims* against a party and permit

2

1   joinder of all defendants alleged to be liable for the "same transaction, occurrence, or series of

2   transactions or occurrences" where "any question of law or fact common to all defendants will

3   arise in the action." Fed. R. Civ. P. 18(a) and 20(a)(2) (emphasis added). But the Rules prohibit

4   conglomeration of unrelated claims against unrelated defendants in a single lawsuit. A litigant

5   must file unrelated claims in separate lawsuits.

6       If an otherwise deficient pleading can be remedied by alleging other facts, a *pro se* litigant

7   is entitled to an opportunity to amend their complaint before dismissal of the action. *See Lopez v.*

8   *Smith*, 203 F.3d 1122, 1127-29 (9th Cir. 2000) (en banc); *Lucas v. Department of Corr*., 66 F.3d

9   245, 248 (9th Cir. 1995). However, it is not the role of the court to advise a *pro se* litigant on

10  how to cure the defects. Such advice "would undermine district judges' role as impartial

11  decisionmakers." *Pliler v. Ford*, 542 U.S. 225, 231 (2004); *see also Lopez*, 203 F.3d at 1131

12  n.13. Furthermore, the court in its discretion may deny leave to amend due to "undue delay, bad

13  faith or dilatory motive of the part of the movant, [or] repeated failure to cure deficiencies by

14  amendments previously allowed . . . ." *Carvalho v. Equifax Info. Srvs., LLC*, 629 F.3d 876, 892

15  (9th Cir. 2010).

16                              **SUMMARY OF COMPLAINT**

17      Plaintiff initiated this action by filing a prisoner civil rights suit pursuant to 42 U.S.C.

18  § 1983. (Doc. No. 1). The events giving rise to Plaintiff's First Amended Complaint took place

19  at the Fresno County Jail ("FCJ") in Fresno, CA. (Doc. No. 1 at 1). The Complaint names as

20  Defendants (1) Correctional Officer Corporal Sonn; (2) Correctional Officer Corporal Toon; (3)

21  Correctional Officer T. Lewis; and (4) Correctional Officer Franco. (*Id*. at 2). The Complaint

22  alleges that each Defendant violated his Eighth Amendment rights by using excessive force in

23  two separate incidents. (*See generally id*.). The following facts are presumed true at this stage at

24  the screening process.

25      On or about November 28 or November 29, 2020, Plaintiff was forced back into his cell

26  by Corporal Sonn after stating safety concerns to Toon regarding Plaintiff's cellmate. (*Id*. at 3).

27  Later that day, Plaintiff vacated his cell and took all of his belongings with him to the dayroom,

28  where he laid down in the prone position. (*Id*.). Soon thereafter, Corporal Soon came into the

                                                3

dayroom with a "squadron of officers" and Sonn began punching Plaintiff. (*Id*.). While Sonn was punching Plaintiff, Defendant Toon placed his knee on Plaintiff's neck. (*Id*. at 4). Plaintiff did not resist. (*Id*.). Then Corporal Sonn took Plaintiff into a hallway, slammed him up against a wall, twisted both of Plaintiff's arms, and told him, "welcome to Fresno County Jail." (*Id*.).

In a separate incident that occurred between January 16 and 18, 2020, Plaintiff was "taken out of the pod after being physically assaulted by other inmates." (*Id*. at 5). Defendant Lewis yanked Plaintiff so hard that he hit his head against the bars, leaving a bump on Plaintiff's head. (*Id*.). Plaintiff was then escorted to the "classroom" where Defendant Lewis slammed Plaintiff against the wall and Defendant Franco punched Plaintiff in his right rib cage. (*Id*.). Plaintiff was forced into a holding cage and ordered to get on his knees, at which point Defendant Lewis repeatedly smacked Plaintiff in the left ear "for up to 5-10 minutes." (*Id*.). A couple of days later Plaintiff was examined by a doctor who observed that Plaintiff's ear was leaking blood. (*Id*.).

As a result of both incidents, Plaintiff suffers from trauma, emotional distress, and mental anguish. (*Id*. at 4-5). As relief, Plaintiff seeks $2,000,000 in damages and injunctive relief to stop the Defendants from harming him. (*Id*. at 6).

## APPLICABLE LAW AND ANALYSIS

### A. Plaintiff's Claims for Injunctive Relief

"Federal Courts are limited to live cases and controversies." *Kittle v. Thomas*, 620 F.3d 949, 951 (9th Cir. 2010) (citing *Flast v. Cohen*, 392 U.S. 83, 96 (1968)); *see also Deakins v. Monaghan*, 484 U.S. 193, 199 (1988) ("Article III of the Constitution limits federal courts to the adjudication of actual, ongoing controversies between litigants.") "Prisoners who have been released from prison or transferred to a different prison may not sue for injunctive relief because they no longer benefit from having the injunction issued." *Rupe v. Cate*, 688 F.Supp. 2d 1035, 1043 (E.D. Cal. Feb. 1, 2010) (citing *Dilley v. Gunn*, 64 F.3d 1365, 1368 (9th Cir. 1995)) (other citations omitted). A prisoner's claim for injunctive relief is moot if there is no reasonable expectation the prisoner will be transferred back to the prison where the harm occurred. *Dilley*, 64 F.3d at 1369. It is not a reasonable expectation that a released prisoner will commit a criminal act and be re-incarcerated. *Reimers v. Oregon*, 863 F.2d 630, 632 n. 4 (9th Cir. 1988).

1    Here, because the record reflects that Plaintiff has been released from Fresno County Jail

2    and is no longer incarcerated, (*see* Doc. No. 9), his claims for injunctive relief against Defendants

3    are moot because there is no reasonable expectation he will return to FCJ.

4    **B. Related Claims and Joinder**

5    The Rules permit a complaint to include all *related claims* against a party and permit

6    joinder of all defendants alleged to be liable for the "same transaction, occurrence, or series of

7    transactions or occurrences" where "any question of law or fact common to all defendants will

8    arise in the action."  Fed. R. Civ. P. 18(a) and 20(a)(2) (emphasis added).  But the Rules do not

9    permit conglomeration of unrelated claims against unrelated defendants in a single lawsuit.

10   Unrelated claims must be filed in separate lawsuits.

> The controlling principle appears in Fed. R. Civ. P. 18(a): 'A party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party.'  Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees-for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g).

19   *K'napp v. California Dept. of Corrections*, 2013 WL 5817765, at *2 (E.D. Cal., Oct. 29,

20   2013), *aff'd sub nom. K'napp v. California Dept. of Corrections & Rehabilitation*, 599 Fed.

21   Appx. 791 (9th Cir. 2015) (alteration in original) (quoting *George v. Smith*, 507 F.3d 605, 607

22   (7th Cir. 2007).

23   Here, Plaintiff's Complaint alleges claims relating to two distinct use of force incidents—

24   one that occurred on or about November 28 or 29, 2020 and involved Defendants Sonn and Toon,

25   the other that occurred between January 16 and 18, 2021[2] and involved Defendants Lewis and

26

---

27   [2] While the Complaint indicates the year 2020, the Court infers that Plaintiff intended 2021.  In an addendum to the Complaint, Plaintiff notes his belief that his 2-year state of limitations for this claim

28   expired "on or about 1-16-23 [to] 1-18-23" which indicates that the incident in fact occurred in 2021.

5

Franco. The Complaint is devoid of facts linking the two incidents that occurred six weeks apart and involved distinct sets of Defendants. "The fact that claims are premised on the same type of constitutional violation(s) . . . against multiple defendants does not make them factually related." *Mosier v. Cal. Dep't of Corr. & Rehab.*, 2012 WL 2577524, at *2 (E.D. Cal. Jul. 2, 2012)), thus the fact that all claims allege excessive use of force is insufficient to make them related for joinder purposes. Further, just "because the claims arose while Plaintiff was at the same institution does not make the claims properly joined." *Camposeco v. Bordeaux*, 2020 WL 5984420, at *5 (E.D. Cal. Jul. 31, 2020). Because the Complaint is devoid of facts indicating that the November 2020 and January 2021 incidents arose out of the same transaction, occurrence, or series of transactions or occurrences, they are misjoined and cannot proceed in the same action.

**C.  Statute of Limitations on Plaintiff's Cognizable but Misjoined Claims**

In considering misjoined claims, the Ninth Circuit cautions the district courts to conduct a prejudice analysis before dismissing the severed parties, pursuant to Federal Rule of Civil Procedure 21. *Rush v. Sport Chalet, Inc*., 779 F.3d 973, 975 (9th Cir. 2015) (abuse of discretion to dismiss rather than sever claims against improperly joined parties without evaluating the prejudice to the plaintiff of dismissal). The Ninth Circuit expressly noted that such consideration should include "loss of otherwise timely claims if new suits are blocked by statutes of limitations." *Rush*, 779 F.3d at 975 (citation omitted).

No statute of limitations is set out in 42 U.S.C § 1983. Instead, California's two-year statute of limitations on personal injury claims applies. Cal. Code Civ. Proc. § 335.1; *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004); *see also Canatella v. Van De Camp*, 486 F.3d 1128, 1132 (9th Cir. 2007); *Maldanado v. Harris*, 370 F.3d 945, 954 (9th Cir. 2004). Under federal law, a civil rights claims like this accrues when plaintiff knows or has reason to know of the injury giving rise to the claim. *Olsen v. Idaho State Bd. of Med*., 363 F.3d 916, 926 (9th Cir. 2004). *See* Cal. Civ. Proc. Code §§ 335.1, 352.1(a) (two-year statute of limitations for personal injury claims; two-year tolling period due to incarceration). The statute of limitations for bringing a claim under § 1983 in California is tolled during the time a prisoner pursues his administrative remedies and is potentially tolled up to an additional two years if plaintiff is

6

incarcerated for a term of less than life.  *See Moreno v. Thomas*, 490 F. Supp. 2d 1055, 1062

(C.D. Cal. 2007) (finding pro se prisoner's section 1983 complaint timely despite being filed

nearly four years after claim arose); *Brown v. Valoff*, 422 F.3d 926, 943 (9th Cir. 2005) ("[T]he

applicable statute of limitations must be tolled while a prisoner completes the mandatory

exhaustion process."); Cal. Civ. Proc. Code §§ 335.1, 352.1(a).  Under California's test for

equitable tolling, a plaintiff must establish "timely notice, and lack of prejudice, to the defendant,

and reasonable and good faith conduct on the part of the plaintiff."  *Butler v. Nat'l Cmty.*

*Renaissance of California*, 766 F.3d 1191, 1204 (9th Cir. 2014) (explaining that federal courts

borrow state law equitable tolling provisions, unless they are inconsistent with federal law, and

setting forth California's doctrine of equitable tolling).

Based on the limited information alleged in Plaintiff's Complaint, the Court concludes it

is likely that all of Plaintiff's claims would be time-barred if he was required to refile them at this

stage.  The incident giving rise to Plaintiff's first claim occurred on or about November 28, 2020,

thus his claim accrued at the time.  Because he was incarcerated at the time the claim accrued,

Plaintiff is eligible for up to two years of tolling under Cal. Civ. Proc. Code § 352.1(a).  However,

Plaintiff notes that he was ultimately released in December 2021, (Doc. No. 1 at 7), thus he was

only in custody for approximately 12 months that would count towards the two years of tolling.

*See Boag v. Chief of Police*, 669 F.2d 587, 589 (9th Cir. 1982) (construing Oregon tolling

provision similar to California's and holding that tolling ceased upon prisoner's release on

parole); *Williams v. Coughlan*, 244 F.2d 6, 8 (9th Cir. 1957) (statute of limitations not tolled after

prisoner released).  A plaintiff's subsequent reincarceration does not reinstate tolling because

Section 352.1 tolls the limitations period only during the period of disability (i.e., incarceration)

that existed at the time the cause of action accrued.  *See* Cal. Code Civ. P. § 352.1 (prisoner

entitled to statutory tolling for disability of imprisonment that existed "at the time the cause of

action accrued"); *see also Boag*, 669 F.2d at 589 (subsequent reincarceration does not reinstate

prior disability of imprisonment for purposes of statutory tolling); *Williams*, 244 F.2d at 8 (statute

tolled only during period of incarceration existing at the time cause of action accrued and not

reinstated by subsequent reincarceration).  Thus, the fact that Plaintiff was reincarcerated in July

1   2022 does not add to the applicable tolling period.  Plaintiff indicates in his Complaint and in his

2   response to an Order to Show Cause that he did not pursue his administrative remedies after filing

3   initial grievances in both cases and subsequently being transferred to CDCR custody.  (*See* Doc.

4   No. 1 at 3; Doc. No. 8 at 1).  Thus, preliminarily it does not appear that Plaintiff is entitled to

5   additional tolling on that basis.

6          Here, the statute of limitation on Plaintiff's first claim would run on November 2022, two

7   years after the claim accrued.  With 12 months of tolling for the period Plaintiff was incarcerated,

8   the statute of limitations would run in November 2023.  Thus, if required to refile his Complaint,

9   absent any additional tolling, Plaintiff's first claim would now likely be time-barred.  Plaintiff's

10  second claim accrued on or about January 18, 2021, thus without tolling, the statute of limitations

11  would have run on or about January 18, 2023.  Because he was incarcerated from the time the

12  claim accrued in January 2021 until his release in December 2021, his claim was tolled for

13  approximately 11 months.  Thus, absent any further tolling, the statute of limitations on Plaintiff's

14  second claim would likely run in December 2023.  Accordingly, if required to refile his second

15  claim, it would be difficult for Plaintiff to do so without violating the statute of limitations.

16         Because, as set forth below, the Court finds that both of Plaintiff's claims are cognizable

17  but would likely be time-barred if Plaintiff were required to refile them, the Court will sever the

18  claims into two separate actions and permit Plaintiff to proceed on both.  Plaintiff, however, will

19  be required to pay the filing fee for each action.

20         **D.  Eighth Amendment Excessive Use of Force**

21         Prison officials who use excessive force against inmates violate the inmate's Eighth

22  Amendment right to be free from cruel and unusual punishment.  *Farmer v. Brennan*, 511 U.S.

23  825, 832 (1994); *Clement v. Gomez*, 298 F.3d 898, 903 (9th Cir. 2002).  "[W]henever prison

24  officials stand accused of using excessive physical force in violation of the [Eighth Amendment],

25  the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or

26  restore discipline, or maliciously and sadistically to cause harm."  *Hudson v. McMillian*, 503 U.S.

27  1, 6-7 (1992).  When determining whether the force was excessive, the court looks to the "extent

28  of injury suffered by an inmate . . . the need for application of force, the relationship between that

need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Id*. at 7 (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)).  While *de minimis* uses of physical force generally do not implicate the Eighth Amendment, significant injury need not be evident in the context of an excessive force claim, because "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." *Hudson*, 503 U.S. at 9.

As set forth below, the Complaint alleges cognizable excessive use of force claims as to Defendants Sonn, Toon, Lewis, and Franco.

### 1. Corporal Sonn

The Complaint alleges that while Plaintiff was lying prone in the dayroom, Defendant Sonn approached Plaintiff and without provocation began punching Plaintiff.  (Doc. No. 1 at 3). Plaintiff did not resist or respond with force.  (*Id*.).  Defendant Sonn continued to punch Plaintiff while Defendant Toon placed his knee on Plaintiff's neck.  (*Id*. at 4).  Further, during the same incident, Defendant Sonn took Plaintiff into a hallway where he slammed Plaintiff against a wall and twisted both of his arms, apparently without any need to do so.  (*Id*. at 3-4).  The Complaint does not provide a detailed description of Defendant Sonn's uses of force.  However, given that Plaintiff was not resisting or posing any threat to others, the fact that Defendant Sonn punched Plaintiff without provocation and slammed him against a wall, the Court infers he did not apply force "in a good faith effort to maintain or restore discipline," but apparently in order to harm Plaintiff.  Thus, the Complaint states a cognizable Eighth Amendment use of force claim against Defendant Sonn.

### 2. Corporal Toon

Correctional officials have an affirmative duty to intervene to protect those in custody from constitutional abuses by correctional colleagues.  *United States v. Reese*, 2 F.3d 870, 887-88 (9th Cir. 1993).  An official's failure to intervene, if provided an opportunity to do so, can violate a prisoner's Eighth Amendment rights.  *Robins v. Meecham*, 60 F.3d 1436, 1442 (9th Cir. 1995); *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000); *see also Knapps v. City of Oakland*, 647 F.Supp.2d 1129, 1163 (N.D. Cal. 2009) ("A reasonable officer could not have reasonably but

mistakenly believed that he had no duty to intervene to stop another officer in their immediate presence from inflicting excessive force on a subject when they could have prevented it."). "[T]he core judicial inquiry" is whether the prison officer either, on one hand, failed to intervene in a good-faith effort to maintain or restore discipline or, on the other hand, maliciously and sadistically failed to intervene to cause harm. *Stevenson v. Holland*, 2017 WL 2958731, at *13 (E.D. Cal. July 11, 2017).

Here, the facts alleged do not support an excessive use of force claim against Defendant Toon for any injury he inflicted on Plaintiff directly.  While the Complaint alleges he placed his knee on Plaintiff's neck, the Complaint does not assert that Defendant Toon's use of a neck restraint caused injury to Plaintiff.  However, the Complaint adequately alleges that Defendant Toon failed to intervene in Defendant Sonn's excessive use of force when he had a duty to do so. Defendant Toon was in close proximity to Defendant Sonn's use of force because he had his knee on Plaintiff's neck at least part of the time Defendant Sonn was punching Plaintiff, thus he had a reasonably opportunity to stop Defendant Sonn.  (*See* Doc. No. 1 at 4).  Given that Plaintiff was not resisting, a reasonable officer in Defendant Toon's position would have recognized that Sonn was applying force not in a good faith effort to restore or maintain discipline, but maliciously and sadistically to cause harm. *See Stevenson*, 2017 WL at *13.  Because he failed to intervene, Defendant Toon violated Plaintiff's Eighth Amendment rights to be free from excessive use of force.  *See United States v. Koon*, 34 F.3d 1416, 1447 n. 25 (9th Cir.1994) ("[T]he constitutional right violated by the passive defendant is analytically the same as the right violated by the person who strikes the blows.") *aff'd in part, rev'd in part*, 518 U.S. 81, (1996); *see also Cunningham*, 229 F.3d at 1289 (An officer who fails to intervene when his fellow officers use excessive force to effect a seizure would be responsible, like his colleagues, for violating the Fourth Amendment.)

### 3. Correctional Officers Lewis and Franco

The Complaint alleges that in the January 2021 incident, Defendant Lewis "yanked" Plaintiff out of a pod where he had just been assaulted by other inmates, causing Plaintiff to bang his head on the cell bars which later left a lump on Plaintiff's head.  (Doc. No. 1 at 5).  After

1   moving Plaintiff to another area of the jail, Defendant Lewis slammed Plaintiff against a wall and

2   Defendant Franco punched Plaintiff in the right rib cage. (*Id*.). Defendant Lewis shoved Plaintiff

3   into a holding cage and ordered him to his knees, then slapped Plaintiff's left ear for 5-10

4   minutes, causing it to bleed and continue leaking days later. (*Id*.).

5          The Complaint adequately states a claim for excessive use of force against both

6   Defendants Lewis and Franco. Even assuming the injury Defendant Lewis' caused to Plaintiff's

7   head while removing him from the cell was an accident, he later slammed Plaintiff against a wall

8   without apparent provocation and then slapped him in the ear for 5-10 minutes. Based on the

9   facts alleged, Plaintiff did not pose a threat to either Defendant Lewis or Franco, and there was no

10  need to use force to subdue him. Thus, the Court reasonably infers that Defendant Lewis

11  slamming Plaintiff against a wall and then slapping him repeatedly in the ear was done

12  maliciously or sadistically to harm plaintiff. Thus, the Complaint states a cognizable Eighth

13  Amendment excessive use of force claim against Defendant Lewis.

14         Likewise, Defendant Franco punched Plaintiff in the rib cage without apparent

15  provocation and when Plaintiff did not plausibly pose a threat to him or Defendant Lewis. Thus,

16  his use of force was not applied in a good faith attempt to maintain or restore order, but

17  maliciously or sadistically to harm Plaintiff. The Complaint therefore states a cognizable Eighth

18  Amendment excessive use of force claim against Defendant Franco.

19         Based on the foregoing, IT IS HEREBY ORDERED as follows:

20      1.  Plaintiff's Eighth Amendment excessive use of force claims against Defendants Sonn

21          and Toon will be permitted to proceed in this action. The Court will order Defendants

22          served by separate order.

23      2.  Plaintiff's Eighth Amendment excessive use of force claims against Defendants Lewis

24          and Franco are severed from the other claims in Plaintiff's Complaint.

25      3.  The Clerk of the Court is directed to:

26          a.  Open a separate civil action for Plaintiff's Eighth Amendment excessive use of

27              force claims against Defendants Lewis and Franco;

28          b.  Randomly assign the new civil action to a Magistrate Judge according to the

1    Court's usual assignment of civil cases;

2        c.  File and docket a copy of this order in the instant action and the new civil

3    action opened for Plaintiff;

4        d.  Place a copy of Plaintiff's *in forma pauperis* application into the new civil

5    actions opened for him for consideration by the Magistrate Judge;

6        e.  Issue new case documents bearing the new case number assigned to the

7    individual action.

8

9    Dated:    November 9, 2023

10    HELENA M. BARCH-KUCHTA
      UNITED STATES MAGISTRATE JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28